David M. Lilienstein, SBN 218923
david@dllawgroup.com
Katie J. Spielman, SBN 252209
katie@dllawgroup.com
**DL LAW GROUP**
345 Franklin St.
San Francisco, CA 94102
Telephone: (415) 678-5050
Facsimile: (415) 358-8484

Attorneys for Plaintiff,
HILARY H.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HILARY H.,<br><br>    Plaintiff,<br><br>v.<br><br>CALIFORNIA PHYSICIANS' SERVICE dba BLUE SHIELD OF CALIFORNIA; DOES 1 through 10,<br><br>    Defendants. | Case No. 4:22-cv-00984-JST<br><br>**PLAINTIFF HILARY H.'S FIRST AMENDED COMPLAINT FOR BREACH OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974 (ERISA); BREACH OF FIDUCIARY DUTY; ENFORCEMENT AND CLARIFICATION OF RIGHTS; PREJUDGMENT AND POSTJUDGMENT INTEREST; AND ATTORNEYS' FEES AND COSTS** |

Plaintiff, HILARY H. herein sets forth the allegations of this Complaint against Defendants CALIFORNIA PHYSICIANS' SERVICE dba BLUE SHIELD OF CALIFORNIA ("Blue Shield"); and DOES 1 through 10.

**PRELIMINARY ALLEGATIONS**

**JURISDICTION**

1.  Plaintiff brings this action for relief pursuant to Section 502 (a) (1) (B) and Section 502 (a) (3) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. Section 1132 (a) (1) (B). This Court has subject matter jurisdiction over Plaintiff's claim pursuant to ERISA Section 502 (e) and (f), 29 U.S.C. Section 1132 (e), (f), and (g) and 28 U.S.C. Section 1331 as it involves a claim made by

Plaintiff for employee benefits under an employee benefit plan regulated and governed under ERISA. Jurisdiction is predicated under these code sections as well as 28 U.S.C. Section 1331 as this action involves a federal question.

2. This action is brought for the purpose of recovering benefits under the terms of an employee benefit plan and enforcing Plaintiff's rights under the terms of an employee benefit plan.

3. Plaintiff seeks relief, including but not limited to: past mental health benefits in the correct amount related to Defendant's improper denial of Plaintiff's claim; prejudgment and post judgment interest; general and special damages; attorneys' fees and costs; surcharge; removal of fiduciary and other equitable relief that is appropriate based on the alleged misconduct at issue herein.

**PARTIES**

4. Plaintiff HILARY H. is, and at all times relevant was, a resident of California.

5. At all relevant times, HILARY H. participated in an employee welfare benefit plan, Gold Full PPO 0/20 OffEx ("the Plan"), within the meaning of ERISA section 3(1), 29 U.S.C. § 1002(1).

6. Mental Health benefits under the Plan were at all relevant times administered by Defendant Blue Shield and/or a third-party Mental Health Services Administrator ("MHSA").

7. Blue Shield is a health insurance provider authorized to transact and currently transacting the business of insurance in the State of California.

8. At all relevant times, the Plan was an insurance plan that offered, *inter alia*, mental health benefits to employees and their beneficiaries, including Plaintiff. This action involves mental health claims denied by the Plan's mental health claim administrator.

**FACTS**

9. The Plan guarantees, warrants, and promises "Mental Health Services" for members and their beneficiaries, including but not limited to: health care services, mental health care, and treatment at issue herein.

10. L.H. is HILARY H.'s child, and was, at all relevant times, a beneficiary of the Plan. L.H. is non-binary and further referred to herein by the pronoun "they."

11. At all relevant times, the Plan was in full force and effect.

**FIRST AMENDED COMPLAINT**                                                                                           CASE NO. 4:22-cv-00984-JST

12. The Plan guarantees, promises, and warrants benefits for medically necessary covered health care services.

13. The Plan defines "Medically Necessary" health care services as:

only those which have been established as safe and effective, are furnished under generally accepted professional standards to treat illness, injury or medical condition, and which, as determined by Blue Shield, are:
 a) consistent with Blue Shield medical policy;
 b) consistent with the symptoms or diagnosis;
 c) not furnished primarily for the convenience of the patient, the attending Physician or other provider;
 d) furnished at the most appropriate level which can be provided safely and effectively to the patient; and
 e) not more costly than an alternative service or sequence of services at least as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of the Member's illness, injury, or disease.

14. The Plan guarantees coverage for inpatient and outpatient treatment of mental health conditions.

15. Residential Care is defined in the Blue Shield Evidence of Coverage as "Mental Health or Substance Abuse Services provided in a facility or a free-standing residential treatment center that provides overnight/extended-stay services for Members who do not require acute inpatient care."

16. California's Mental Health Parity Act, Health & Safety Code §1374.72, as well as the Federal Mental Health Parity and Addictions Equity Act of 2008 ("MHPAEA") specifically require that health care plans provide medically necessary diagnosis, care and treatment for the treatment of specified mental health illnesses at a level equal to the provision of benefits for physical illnesses.

17. At all relevant times, L.H. was diagnosed with, *inter alia,* post-traumatic stress disorder (PTSD), depression, anxiety, borderline personality disorder (BPD), marijuana use, cannabinoid hyperemesis syndrome, and childhood neuroblastoma.

18. At the age of two, L.H. was diagnosed with stage four neuroblastoma and given a 20% chance of survival. As a result of this diagnosis, L.H. underwent five rounds of inpatient chemotherapy, bypass surgery, radiation, and stem cell harvest and transplant.

19. The long-term aftereffects of L.H.'s treatment include hearing loss, infertility, femoral bone lesion, major body scars, low body weight, sparse head hair, and shallow tooth roots.

20. As an adolescent, L.H. began displaying behavioral problems such as self-harming, shoplifting, suicidal ideations, and struggling in school. They began seeing a therapist.

21. During L.H.'s first year of college, they attempted suicide and were hospitalized. Despite ongoing outpatient therapy, L.H. self-admitted to the hospital three more times for problems related to self-harm. As a result of these behaviors L.H. was forced to take a leave of absence from college.

22. Over the next year, L.H. continued to receive both inpatient and outpatient treatments, including dialectical behavioral therapy, personal therapy, and substance abuse meetings. Despite ongoing treatment, their condition worsened.

23. L.H. was putting their life at risk through self-harm, suicidal ideations, impulsivity, was self-medicating with drugs and alcohol, and showing other dangerous behaviors.

24. As a result of this escalating dangerous behavior, L.H. was admitted to Optimum Performance Institute Innerchange ("OPI").

25. At all times relevant, L.H.'s treatment at OPI was medically necessary, based upon the reasoned medical opinions of her treaters.

26. Plaintiff filed claims for mental health benefits pursuant to the terms of the Plan for L.H.'s treatment at OPI.

27. Blue Shield and/or its MHSA denied Plaintiff's claims for treatment at OPI.

28. Plaintiff timely appealed Blue Shield and/or its MHSA's denials of L.H.'s claims for treatment at OPI.

29. Blue Shield and/or its MHSA denied Plaintiff's appeals.

30. Not only were Blue Shield and/or its MHSA's denials unreasonable in light of the obvious medical necessity for L.H.'s ongoing mental health care, but the denials also violated the California Mental Health Parity Act, as well as the Mental Health Parity and Addictions Equity Act of 2008 ("MHPAEA"), which alone provided a basis for approving all of the care for L.H. that is at issue herein.

31. In denying Plaintiff's claim for care and treatment for L.H. at OPI, Blue Shield and/or its MHSA, used MCG "level of care guidelines" that are unfair and biased against approving claims for

residential treatment such as are at issue herein, and that do not reflect reasonable standards in the medical community.

32. The MCG level of care guidelines used by Blue Shield and/or its MHSA to deny L.H.'s care fall below reasonable standards of care in the medical community.

33. Blue Shield and/or its MHSA breached the generally accepted standard of care herein by using the MCG level of care guidelines which fail to accept and consider that treatment is not limited to simply alleviating an individual's current mental health symptoms, and by ignoring and failing to consider the long-term, chronic nature of L.H.'s mental health needs.

34. Blue Shield and/or its MHSA breached the generally accepted standard of care herein by using the MCG level of care guidelines which fail to accept and consider that effective treatment of co-morbid, or co-occurring behavioral health disorders requires consideration of the interaction of these disorders, and the implications of these disorders on determining the proper and appropriate level of care.

35. Blue Shield and/or its MHSA breached the generally accepted standard of care herein by using the MCG level of care guidelines which fail to accept and consider that where there is ambiguity over the proper level of care, that practitioners should err on the side of caution and should place patients in the higher level of care.

36. Blue Shield and/or its MHSA breached the generally accepted standard of care herein by using the MCG level of care guidelines which improperly focus on acute symptomology and fail to consider that the same level of care is needed when an acute crisis has passed, and fail to consider the likelihood of regression and risk of further acute symptomology.

37. The MCG level of care guidelines not only fall below reasonable standards in the medical community but are much more draconian in their application to mental health care treatment than to treatment for physical ailments.

38. Blue Shield and/or its MHSA's use of the MCG level of care guidelines violated the California Mental Health Parity Act which requires health care plans to provide medically necessary diagnosis, care, and treatment for the treatment of specified mental health illnesses at a level equal to the provision of benefits for physical illnesses.

**FIRST AMENDED COMPLAINT**                                CASE NO. 4:22-cv-00984-JST

39. As a result, Plaintiff was forced to pay for L.H.'s care and treatment at OPI from his own personal funds.

40. Plaintiff has exhausted all administrative remedies regarding the denial of L.H.'s mental health benefits.

## CLAIMS FOR RELIEF
### FIRST CAUSE OF ACTION
### Recovery of Benefits Due Under an ERISA Benefit Plan
(Against CALIFORNIA PHYSICIANS' SERVICE dba BLUE SHIELD OF CALIFORNIA; DOES 1-10; Enforcement and Clarification of Rights, Prejudgment and Post Judgment Interest, and Attorneys' Fees and Costs, Pursuant to ERISA Section 502(a)(1)(B), 29 U.S.C. Section 1132(a)(1)(B))

41. Plaintiff incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

42. ERISA Section 502(a)(1)(B), 29 U.S.C. Section 1132(a)(1)(B) permits a plan participant to bring a civil action to recover benefits due under the terms of the plan and to enforce Plaintiff's rights under the terms of a plan.

43. At all relevant times, Plaintiff and his child, L.H. were insured under the health care plan at issue herein, and Plaintiff's child, L.H., met the covered health services and medical necessity criteria for treatment required under the terms and conditions of the Plan.

44. By denying Plaintiff's mental health claim, Defendants have violated, and continue to violate, the terms of the Plan, the terms of ERISA, and Plaintiff's rights thereunder.

45. The provisions of an ERISA plan should be construed so as to render none nugatory and to avoid illusory promises.

### SECOND CAUSE OF ACTION
### Breach of Fiduciary Duty Under ERISA § 502(a)(3), 29 U.S.C. Section 1132(a)(3)
(against Defendants CALIFORNIA PHYSICIANS' SERVICE dba BLUE SHIELD OF CALIFORNIA; DOES 1-10)

46. Plaintiff incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

47. At all material times herein, Defendants, and each of them, were fiduciaries with respect to their exercise of authority over the management of the Policy, disposition of Plan assets, and administration of the Policy.

48. Plaintiff asserts that a claim for benefits due under the Policy does not provide him with an adequate remedy at law in light of Defendants' continuing course of conduct in violating the terms of the Policy and applicable law as described below.

49. ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), requires fiduciaries to discharge their duties solely in the interests of employee benefit plan participants and beneficiaries and for the exclusive purpose of providing benefits and defraying reasonable expenses of administering the plan.

50. ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), requires fiduciaries to discharge their duties with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

51. ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), requires fiduciaries to discharge their duties in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of ERISA.

52. In committing the acts and omissions herein alleged, Defendant breached their fiduciary duties in violation of ERISA §§ 404(a)(1)(A), (B) and (D), 29 U.S.C. §§ 1104(a)(1)(A)(B) and (D).

53. At all material times herein, Defendant violated these duties by, *inter alia,* the following:

A. Consciously, unreasonably, intentionally, and without justification, failing to disclose to plan participants their use of MCG "level of care guidelines" that are unfair and biased against approving claims for residential treatment such as are at issue herein, and that do not reflect reasonable standards in the medical community;

B. Consciously, unreasonably, intentionally, and without justification, violating California's Mental Health Parity Act, Health & Safety Code §1374.72, as well as the Federal Mental Health Parity and Addictions Equity Act of 2008 ("MHPAEA") which specifically require that health care plans provide medically necessary diagnosis, care and treatment for the treatment of specified mental health illnesses at a level equal to the provision of benefits for physical illnesses;

C. Consciously and unreasonably failing to investigate all bases upon which to pay and honor Plaintiff's claim, and related claims and/or similar claims, for benefits, and

consciously and unreasonably failing to investigate all bases to support coverage fairly and in good faith and refusing to give Plaintiff's interests or the interests of the Plan at least as much consideration as they gave their own;

D. Consciously and unreasonably asserting improper bases for denying full payment of Plaintiff's claim, and related claims and/or similar claims, for mental health care benefits;

E. Consciously and unreasonably interpreting the Plan in a manner designed to deny and minimize benefits and in a manner that thwarts the reasonable expectations of the Plan's beneficiaries and participants in order to maximize its own profits and minimize the benefits that it pays claimants;

F. Consciously and unreasonably refusing to pay Plaintiff's claim, and related claims and/or similar claims, with the knowledge that Plaintiff's claim and similar claims are payable and with the intent of boosting profits at Plaintiff's and other claimants' expense; and

G. Consciously and unreasonably failing to follow the terms of the Plan and applicable regulations governing the administration of claims, and the review of denied claims.

54. As a result of Defendant's breaches of fiduciary duty, Plaintiff has been harmed, and the Defendant has been permitted to retain assets and generate earnings on those assets to which Defendant was not entitled.

55. Plaintiff further requests judgment permanently enjoining Defendant from using the MCG level of care guidelines that fall below reasonable standards in the medical community, either as written or as applied, or both. In addition, Plaintiff seeks appropriate equitable relief from all Defendants, and each of them, including an order by this Court that, based upon principles of waiver and/or estoppel, Plaintiff is entitled to benefits in the amount of the cost of L.H's treatment at OPI. In addition, Plaintiff seeks disgorgement of profits, make-whole relief, and that Plaintiff be placed in the position that he would have been in had he been paid the full amount of benefits to which he is entitled,

including, without limitation, interest, attorneys' fees and other losses resulting from Defendant's breach.

**PRAYER FOR RELIEF**

**AS TO ALL DEFENDANTS**

**WHEREFORE,** Plaintiff prays that the Court grant the following relief:

56. Declare that Defendant violated the terms of the Plan by failing to provide mental health benefits;

57. Order Defendant to pay the mental health benefits due, together with prejudgment interest on each and every such benefit payment through the date of judgment at the rate of 9% compounded;

58. Award Plaintiff reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA Section 502(g), 29 U.S.C. Section 1132(g);

59. Provide such other relief as the Court deems equitable and just.

**WHEREFORE,** Plaintiff prays that the Court grant the following relief as to the SECOND CAUSE OF ACTION:

60. Order Defendant to cease using The MCG level of care guidelines to evaluate claims involving mental health treatment;

61. Order that Defendant use non-profit or clinical specialty association level of care guidelines, such as the Level of Care Utilization System (LOCUS) guidelines to evaluate mental health claims;

62. To the extent the Court undertakes a review of Plaintiff's claim for benefits under his First Cause of Action, Order that such review shall not be based on the proprietary MCG Criteria used by Defendant, but rather on non-profit or clinical specialty association guidelines, such as the Level of Care Utilization System (LOCUS);

63. To the extent the Court remands Plaintiff's claim for benefits to Defendant, Order that Defendant reevaluate Plaintiff's claim using non-profit or clinical specialty association guidelines, such as the Level of Care Utilization System (LOCUS);

64. Order that, to the extent Defendant uses level of care guidelines to evaluate mental health claims, that Defendant provide copies of the guidelines to all claimants whose claims are denied, along with the specific section(s) of the guidelines it relied upon;

65. Order that each fiduciary found liable for breaching his/her/its duties to disgorge any profits made through the denial of medically necessary claims through the use of inconsistent care guidelines. This includes, but is not limited to, any violation of ERISA §§ 404 and 406;

66. For appropriate equitable relief pursuant to 29 U.S.C. §§ 1132(a)(2) and (a)(3), including but not limited to, a declaration of Plaintiff's rights to a full and fair review under ERISA, and a declaration of Plan participants' and beneficiaries' rights to a full and fair review;

67. For surcharge relief;

68. An injunction against further denial of Plaintiff's benefits pursuant to 29 U.S.C. §§ 1132(a)(3);

69. Provide such other relief as the Court deems equitable and just.

Dated: June 21, 2022                    Respectfully submitted,

**DL LAW GROUP**

By: /s/ David M. Lilienstein
David M. Lilienstein
Katie J. Spielman
Attorneys for Plaintiff, HILARY H.